| | | |
|---|---|---|
| BARRINGTON BANK & TRUST COMPANY, NATIONAL ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | No. 14 C 06710 |
| v. | ) ) | Judge Edmond E. Chang |
| THE FEDERAL DEPOSIT INSURANCE CORPORATION, et al., | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

This case arises out of a dispute over rent allegedly owed by a failed financial institution, Charter National Bank. The FDIC, as the receiver of Charter, transferred many of the bank's assets to Plaintiff Barrington Bank & Trust. Among the transferred assets was a lease for one of Charter's bank locations. The landlord of that location claims that Barrington, as assignee of the lease, is responsible for the past-due rent owed by Charter. Barrington filed this action under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration that it does not owe the unpaid rent. R. 8, First Am. Compl.[1]

Shortly after this case was filed, the landlord of the property—Defendant Chicago Title Land Trust Company—filed an action against Barrington in state court, seeking eviction and damages for the amount due under the lease. R. 28-1, State Court Compl. In responding to that suit, Barrington joined the FDIC as a

---

[1]Citations to the docket are indicated as "R." followed by the entry number.

third-party defendant, and then the FDIC removed the case to federal court. *Id.*; *see also* Notice of Removal, *Chicago Trust Co. v. Barrington Bank & Trust, N.A.*, 14-cv-09570 (N.D. Ill. Dec. 12, 2014). The FDIC then moved to consolidate that case (the one that had been in state court) with this declaratory-judgment action. R. 28, Mot. Consolidate; R. 31, Dec. 22, 2014 Minute Entry. The other parties did not object. Dec 22, 2014 Minute Entry. The cases were consolidated, and this Court determined that Chicago Title's eviction claims were compulsory counterclaims in the declaratory-judgment action. *Id.* Chicago Title was directed to amend its responsive pleading to the declaratory-judgment action to include these counterclaims; it has not yet done so. *Id.*

Instead, Chicago Title now argues that the Court does not have subject matter jurisdiction over either the declaratory-judgment action or the removed eviction action. *See generally* R. 34 (Chicago Title's Brief). Barrington and the FDIC disagree, arguing that there is jurisdiction over both because the FDIC is a party and because there are substantial federal questions. *See generally* R. 32 (FDIC's Brief); R. 35 (Barrington's Brief). Barrington and the FDIC also argue that, under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1821 *et seq.*, Chicago Title has failed to exhaust its claims and that it lacks what the FDIC calls "standing" to enforce the contract between the FDIC and Barrington. *See* FDIC's Br. at 8-15. If this is the case, Chicago Title's claims must be dismissed for lack of jurisdiction. For the reasons discussed below,

the Court has subject-matter jurisdiction over both the declaratory judgment action and the counterclaim, and the counterclaim is dismissed for failure to exhaust.

# I. Background

On February 10, 2012, Charter National Bank failed. First Am. Compl. at 2. The FDIC was appointed as the institution's receiver, *id.*, and was responsible for managing the assets and liabilities of the failed bank, 12 U.S.C. § 1821(d). Acting as Charter's receiver, the FDIC transferred some of Charter's assets and liabilities to Barrington Bank & Trust under a Purchase and Assumption Agreement. First Am. Compl. at 2. As part of this agreement, Barrington assumed Charter's lease for a building at 1400 Irving Park Road in Hanover Park, Illinois. *Id.* The assumption of the lease occurred on June 8, 2012. *Id.* ¶ 23. The current landlord of this property is Chicago Title Land Trust Company, as the trustee of a land trust. *Id.* at 2-3. Defendants 1400 Irving Park Limited Partnership and Northwest Investors, Inc. are directors of the Chicago Title land trust.[2] *Id.* ¶¶ 4-5.

When Charter failed, the FDIC publicly announced the process by which creditors of the failed institution could request payment. *Id.* ¶ 16. Anyone who provided, among other things, a "leased space" to Charter had to submit a claim to the FDIC by May 17, 2012. *Id.* Chicago Title did not file a claim within this timeframe. R. 15, Chicago Title's Answer ¶ 17. Now, Chicago Title claims that, at the time it closed, Charter owed more than $1.3 million in unpaid rent. State Court

---

[2]For convenience's sake, Chicago Title, 1400 Irving Park, and Northwest Investors will be referred to collectively as "Chicago Title."

Compl. ¶ 14. Chicago Title believes that Barrington, as assignee of the lease, is responsible for that unpaid rent. *Id.* ¶¶ 6-7, 9.

Although Barrington did assume the lease under the Purchase and Assumption Agreement, the bank argues that it did not assume liability for the pre-failure rent owed by Charter. First Am. Compl. ¶ 20. The agreement explicitly set out which of Charter's liabilities that Barrington took on, and that list does not include unpaid rent. *Id.* ¶ 19. The agreement also says that the FDIC will indemnify Barrington for losses arising from any Charter liabilities that Barrington did not expressly assume. *Id.* ¶ 21. Based on these provisions, Barrington filed this suit, seeking a declaration that it does not owe any unpaid rent owed by Charter. *Id.* at Prayer for Relief.

Less than two months later (but after Chicago Title had been served with summons in this case), Chicago Title filed an eviction action against Barrington in state court seeking possession of the property and the unpaid rent. *See* State Court Compl. (filed Oct. 10, 2014); *see also* R. 11, Chicago Title Summons (served Sept. 23, 2014). In answering the state-court complaint, Barrington named the FDIC as a third-party defendant. R. 28-1, State Court Answer at 28-38. The FDIC quickly removed the state-court action under 12 U.S.C. § 1819(b)(2)(B). Notice of Removal at 1, *Chicago Trust Co.*, 14-cv-09570. Once the state-court action was removed, the FDIC moved to consolidate it with Barrington's declaratory-judgment action. Mot. Consolidate. No party objected. Dec. 22, 2014 Minute Entry. This Court granted the

motion to consolidate, finding that the removed eviction claim was a compulsory counterclaim to Barrington's declaratory-judgment action. *Id.*

Chicago Title was directed to amend its responsive pleading to include those claims, but the deadline to amend the pleadings was suspended because Chicago Title questioned the Court's jurisdiction to hear both the declaratory-judgment action and the removed eviction claim, *id.*; R. 43, Feb. 17, 2015 Minute Entry. The parties were instructed to submit briefs on the issue. Dec. 22, 2014 Minute Entry. In conjunction with the subject matter jurisdiction issue, the FDIC argued that *no* court has jurisdiction to hear the removed claim because Chicago Title has failed to exhaust under FIRREA. FDIC's Br. at 13-15. It also argued that Chicago Title lacked standing to challenge the Purchase and Assumption Agreement. *Id.* at 8-12. Although Chicago Title had not yet amended its responsive pleading to include the counterclaims, it was ordered to respond to the FDIC's substantive arguments. Feb. 17, 2015 Minute Entry.

## II. Subject Matter Jurisdiction

Chicago Title argues that the Court lacks subject matter jurisdiction over both the original declaratory-judgment action and the state-court eviction action. Chicago Title's Br. at 3-8. Generally, "the party invoking federal jurisdiction bears the burden of demonstrating its existence." *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 679 (7th Cir. 2006). In this case, FDIC and Barrington are those parties. In evaluating a challenge to jurisdiction, "the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever

evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008) (internal alterations omitted) (quoting *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007)). The Court will address its jurisdiction over each claim in turn.

## A. Declaratory-Judgment Action

Federal courts have jurisdiction, known as federal-question jurisdiction, over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case arises under the laws of the United States within the meaning of § 1331 only when the claim for relief depends in some way on federal law as stated in a well-pleaded complaint, "unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." *Vorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 402 (7th Cir. 2001) (quoting *Taylor v. Anderson*, 234 U.S. 74, 75-76 (1914)) (internal quotation marks omitted). When the FDIC is a party to a civil lawsuit, the suit is "deemed to arise under the laws of the United States" for purposes of § 1331.[3] 12 U.S.C. § 1819(b)(2)(A) ("[A]ll suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States."); *see also Nat'l Union Fire Ins. Co. of Pittsburgh v. Baker & McKenzie*, 997 F.2d 305, 307 (7th Cir. 1993) (stating that the FDIC's "presence as a party conferred federal jurisdiction over the suit").

---

[3]Subject to exceptions that neither party argues are applicable here.

In its complaint, Barrington asserts that the Court has federal-question jurisdiction over its declaratory judgment action because the FDIC is a party. First Am. Compl. ¶¶ 8-10. Barrington named the FDIC as a defendant because it alleges that the FDIC must indemnify it for all unassumed pre-failure claims. *Id.* at 4. On the face of Barrington's complaint, then, the Court has federal-question jurisdiction over the declaratory-judgment action. *See* 12 U.S.C. § 1819(b)(2)(A). Chicago Title argues that there is no actual controversy between the FDIC and Barrington because the FDIC has agreed that it must indemnify Barrington. Chicago Title's Br. at 6. Because the FDIC and Barrington substantially agree, Chicago Title argues, Barrington's claim against the FDIC is moot and the FDIC cannot be considered for jurisdictional purposes. *Id.* But this argument ignores the substantial interest that the FDIC has in the outcome of this action.

A claim is "moot" when the parties "lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007) (holding that, under the Declaratory Judgment Act, "the phrase 'case of actual controversy' … refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III") (citation omitted). In the context of an action under the Declaratory Judgment Act, "the test … is whether there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *GNB Battery Tech., Inc. v. Gould, Inc.*, 65 F.3d 615, 620 (7th Cir. 1995) (internal alterations and citation omitted). "[A]s long as the parties have a concrete

interest, however small, in the outcome of the litigation, the case is not moot." *Killian v. Concert Health Plan*, 742 F.3d 651, 660 (7th Cir. 2013) (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 132 S.Ct. 2277, 2287 (2012)).

Here, the FDIC might not have a live dispute with *Barrington*, but there is no question that there is a substantial controversy between the parties in which the FDIC has a concrete interest. Barrington seeks a declaration that it does not owe Chicago Title any rent that was not paid by its predecessor under the lease, Charter. First Am. Compl. at Prayer for Relief. If Barrington *is* responsible for the unpaid rent, it seeks a declaration that it is indemnified by the FDIC. The FDIC, as the potential indemnitor of any claims against Barrington, has a significant stake in the outcome of the case. *Id.* ¶ 21; R. 17, FDIC's Answer ¶¶ 20-21 (admitting that FDIC has agreed to indemnify Barrington). Any declaration that Barrington does or does not owe nearly $1.3 million in rent would have a direct and actual impact on the FDIC. Moreover, Barrington's declaratory-judgment action seeks an interpretation of the Purchase and Assumption Agreement, a contract to which the FDIC is a party.

That the FDIC's interests are not adverse to Barrington's interests does not change the conclusion that the FDIC has a concrete interest in the outcome of the litigation. Rather, it simply suggests that the parties should be realigned to better reflect their actual legal interests. Realignment of parties "is proper when the court finds that no actual, substantial controversy exists between the parties on one side of the dispute and their named opponents." *Wolf v. Kennelly*, 574 F.3d 406, 412 (7th

Cir. 2009) (quoting *American Motorists Ins. Co. v .Trane Co.*, 657 F.2d 146, 149 (7th Cir. 1981)). In evaluating whether parties should be realigned, "courts must focus on the points of substantial antagonism, not agreement." *Id.* (internal quotation marks and citation omitted). Realignment "is a matter not determined by mechanical rules, but rather by pragmatic review of the principal purpose of the action and the controlling matter in dispute." *American Motorists*, 657 F.3d at 151. To that end, a court determining the alignment of the parties "may look beyond the pleadings and consider the nature of the dispute in order to assess the parties' real interests." *Id.* at 149.

Here, the FDIC's interests are squarely adverse to Chicago Title's. Barrington is seeking a declaration that it does not owe any unpaid rent to Chicago Title. First Am. Compl. at Prayer for Relief. Because the FDIC has agreed to indemnify Barrington, *see* FDIC's Answer ¶¶ 20-21, any declaration that Barrington owes the unpaid rent would necessarily be a claim against the FDIC as well. Both Barrington and the FDIC are therefore seeking to establish that Chicago Title is not entitled to any rent, while Chicago Title argues the opposite. *See* Chicago Title's Answer ¶¶ 20, 22-23, 35-37. So, looking at the nature and principal purpose of the dispute, it is clear that realignment is necessary to better reflect the actual interests of the parties.

Because the FDIC is a proper party with a concrete and legally cognizable interest in the outcome of this dispute, Barrington's claim arises under the laws of the United States. 12 U.S.C. § 1819(b)(2)(A); 28 U.S.C. § 1331. The Court therefore

has jurisdiction over Barrington's declaratory judgment action.[4] To better reflect the actual interests of the parties, the FDIC is realigned as a plaintiff.

## B. Eviction Action

Chicago Title next argues that the Court does not have jurisdiction over its removed state-law eviction claim. Chicago Title's Br. at 3-7. Chicago Title makes several arguments centered around the FDIC's participation and the removal statute, 28 U.S.C. § 1441, but it is not necessary to consider these arguments.[5] The Court has already concluded that Chicago Title's eviction claim is a compulsory counterclaim,[6] Dec. 22, 2014 Minute Entry, "and a compulsory counterclaim does not require an independent grant of jurisdiction," *Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 410 (7th Cir. 2004). Because there is subject matter jurisdiction over the declaratory-judgment action, the Court has, by definition, supplemental jurisdiction

---

[4]Because the FDIC is a proper party, the Court does not need to consider Barrington's arguments that there is federal-question jurisdiction independent of the FDIC's participation. *See* Barrington's Br. at 10-12; R. 40, Barrington's Resp. Br. at 6-8.

[5]Given the broad removal powers of the FDIC, however, *see* 12 U.S.C. § 1819(b)(2)(B) (stating that the FDIC may "remove any action, suit, or proceeding from a State court to the appropriate United States district court before the end of the 90-day period beginning on the date the action, suit, or proceeding is filed against the [FDIC] or [the FDIC] is substituted as a party"), it is likely that there is independent jurisdiction over the removed claim anyway.

[6]A compulsory counterclaim is one that (1) exists at the time of the pleading; (2) arises out of the same transaction or occurrence as the opposing party's claim; and (3) does not require for adjudication parties over whom the court may not acquire jurisdiction. *Burlington Northern R.R. Co. v. Strong*, 907 F.2d 707, 710-11 (7th Cir. 1990); Fed. R. Civ. P. 13(a). Here, Barrington is seeking a declaration that it does not owe pre-failure rent under the lease and the purchase and assumption agreement, and Chicago Title argues that Barrington *does* owe that same pre-failure rent. The claims clearly arise from the same occurrence. The claim existed as soon as the rent was not paid (at the latest, February 2012), and there is no argument that this claim requires parties over whom the Court does not have jurisdiction. Chicago Title's eviction claim is therefore a compulsory counterclaim.

over the counterclaim as well.[7] 28 U.S.C. § 1367; *see also Unique Concepts, Inc. v. Manuel*, 930 F.2d 573, 574 (7th Cir. 1991) ("A federal court has supplemental jurisdiction over compulsory counterclaims.").

To avoid this result, Chicago Title argues that federal courts do not have jurisdiction over state-law eviction claims at all. Chicago Title's Br. at 4. In support of this argument, Chicago Title cites *Kubiak v. Meltzer*, which it believes stands for the proposition that federal courts cannot hear state-law eviction claims. *Id.* (citing 2013 WL 1114203, at *1 (N.D. Ill. Mar. 15, 2013)). That is an incorrect reading of what the opinion actually held. In *Kubiak*, the district court concluded that it could not exercise federal-question jurisdiction over a state-law eviction claim because "[a]n eviction does not arise under the Constitution, law, or treaties of the United States." 2013 WL 1114203 at *1. But that does not mean that a federal court could *never* exercise jurisdiction over the claim. Federal courts exercise jurisdiction over state-law causes of action all the time. *See* 28 U.S.C. §§ 1332, 1367. *Kubiak* simply reinforces the understanding that eviction claims are state-law causes of action and are subject to the ordinary federal-jurisdictional rules governing state-law claims. Many of the other cases cited by Chicago Title similarly decline to exercise federal

---

[7]Chicago Title argues that its eviction claim is not compulsory because there is no jurisdiction over the declaratory judgment action. R. 46, Chicago Title's Suppl. Br. at 8-9. Because there *is* jurisdiction over that claim, as discussed above, this argument fails. Chicago Title also conflates consolidation of the claims with compulsory counterclaims. Chicago Title's Br. at 7. Chicago Title argues that consolidating claims will not create ancillary jurisdiction where there was none, *id.*, but jurisdiction is not premised on the consolidation of the claims. The Court has supplemental jurisdiction over the compulsory counterclaim because it arises from the same transaction or occurrence as the claim over which it has federal-question jurisdiction. *Unique Concepts, Inc. v. Manuel*, 930 F.2d 573, 574 (7th Cir. 1991).

jurisdiction over state-law eviction claims based on the particular circumstances of the case. *See, e.g., Seidel v. Wells Fargo Bank, N.A.*, 2012 WL 2571200, at *2 (D. Mass. July 3, 2012) (refusing to enjoin a state-court eviction action under the *Younger* abstention doctrine); *DLJ Mortg. Capital, Inc. v. Rodis*, 2011 WL 3841384, at *1 (D. Nev. Aug. 29, 2011) (refusing to remove an eviction claim because defenses or counterclaims could not be used to create federal-question jurisdiction); *Blaser v. Bentley*, 2009 WL 2516260, at *1 (D. Utah Aug. 13, 2009) (same). They do not stand for the proposition that there is some general ban against federal-court jurisdiction over eviction claims.

*Johnson v. Illinois Department of Public Aid* does not compel a different conclusion. 467 F.2d 1269 (7th Cir. 1972). In *Johnson*, public-aid recipients brought a purported class action against the Illinois Department of Public Aid, arguing that the imposition of additional rental charges violated their right to due process. *Id.* at 1271. The Seventh Circuit concluded that, because the claims of the named plaintiffs were moot, there was "no present, actual controversy between the parties for the purposes of a declaratory judgment." *Id.* at 1273. The plaintiffs could not justify further litigation "on the uncertain basis that some tenants might in the future be evicted under the lease arrangement" involved in the suit. *Id.* Because the potential future plaintiffs would be able to bring their constitutional claims in the eviction proceedings, *Johnson* held that Illinois law "adequately provides the remaining plaintiffs with procedural due process." *Id.* Thus, it was in the context of a due-process analysis that *Johnson* said that it saw "no reason for a tenant not to

raise the propriety of the additional charges in state court proceedings, if such proceedings should occur." *Id.* at 1274. Because Illinois state law provided adequate process through its laws, there was no need for the federal courts to "resolve the claimed federal constitutional questions." *Id.* This does not suggest that federal courts could not hear the eviction-related questions. In fact, *Johnson* stated that although it is "better practice, in a case raising a federal constitutional or statutory claim, to retain jurisdiction," the uncertainty of the remaining plaintiffs' claims necessitated dismissal. *Id.* Had the claims been ripe, the district court could have entertained them based on the constitutional claims.

To be sure, there are several cases, cited by Chicago Title, which suggest that the summary nature of eviction proceedings may deprive federal courts of subject-matter jurisdiction. *See, e.g., CPG Fin. I, L.L.C. v. Shopro, Inc.*, 2006 WL 744275, at *3 (W.D. Mo. Mar. 22, 2006); *Glen 6 Assocs., Inc. v. Dedaj*, 770 F. Supp. 225, 227-28 (S.D.N.Y. 1991). But the "[k]ey to these cases was the limited nature of eviction proceedings under the laws of the states in which they arose." *MCC Mortg. LP v. Office Depot, Inc.*, 685 F. Supp. 2d 939, 945 (D. Minn. 2010) (ignoring the "summary" label and assessing the actual procedures available under Minnesota law). For example, in Missouri, no formal pleadings are required, there is no discovery or trial by jury, and the proceedings are expedited. *CPG Finance*, 2006 WL 744275 at *2; *See Glen 6 Assocs.*, 770 F. Supp. at 227-28 (describing similar procedures in New York). But Chicago Title does not point to any authority that would suggest that the Illinois eviction proceedings have similar procedural

features. *See* Chicago Title's Br. at 4; Chicago Title's Suppl. Br. at 5-6. In Illinois, parties may request a trial by jury, 735 ILCS 5/9-108; the parties can take discovery, 735 ILCS 5/9-106 ("The defendant may … offer in evidence any matter in defense of the action."); 2 ILLINOIS REAL PROPERTY § 15:51 (stating that discovery in eviction claims is subject to the ordinary rules of civil discovery); eviction actions must be initiated with a complaint and the defendant must be issued a summons, 735 ILCS 5/9-106; and the parties can raise at least some related defenses and counterclaims in their eviction action, *see Johnson*, 467 F.2d at 1273 (holding that the Illinois eviction statute "has been held to allow equitable defenses such as civil rights violations or unconscionable contracts to be raised"); *see also Bd. of Dirs. of Warren Blvd. Condo. Ass'n v. Milton*, 927 N.E.2d 176, 176 (Ill. App. Ct. 2010) (describing an eviction claim in which the defendants sought a jury trial and took discovery). Moreover, federal courts have entertained Illinois eviction claims (when they have established that there is jurisdiction of the state-law claim on some other basis). *See, e.g., BEM I, LLC v. Anthropologie, Inc.*, 301 F.3d 548, 551-54 (7th Cir. 2002) (finding diversity jurisdiction over an Illinois eviction claim); *Republic Bank of Chicago v. Desmond*, 2014 WL 3905712, at *3 (N.D. Ill. Aug. 11, 2014) (exercising jurisdiction over an Illinois eviction counterclaim); *Woodmen of World Life Ins. Soc. v. Great Atl. Pac. Tea Co., Inc.*, 561 F. Supp. 640, 641-42 (N.D. Ill. 1982) (refusing to remand an Illinois eviction action because the court had diversity jurisdiction). The Court may therefore exercise jurisdiction over the state-law eviction claim in the same manner that it would exercise jurisdiction over any other state-law claim. In

this case, the eviction claim is a compulsory counterclaim, and the Court has supplemental jurisdiction under 28 U.S.C. § 1367.

### III. Exhaustion

Having determined that there is subject-matter jurisdiction over the declaratory-judgment action and the compulsory counterclaim, it is time to turn to the issue of exhaustion, specifically, whether Chicago Title has failed to exhaust its claim to the rent. Although exhaustion may seem like an affirmative defense best suited for a motion for judgment on the pleadings or a motion for summary judgment, the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) converts the exhaustion question into a jurisdictional one. 12 U.S.C. § 1821(d)(13)(D). Under the FIRREA, "the FDIC has statutory authority to administer claims against a depository institution for which the FDIC is receiver." *Farnik v. FDIC*, 707 F.3d 717, 721 (7th Cir. 2013). "Courts lack jurisdiction to hear such claims unless plaintiffs first present them to the FDIC." *Id.* (citing 12 U.S.C. § 1821(d)(13)(D)(ii)); *see* 12 U.S.C. § 1821(d)(6) (allowing review of the claims process in the district courts, but only after presentation to the FDIC).[8] Because Chicago Title is now asserting that there is jurisdiction over the claim, Chicago Title's Resp. Br. at 7-9 (arguing that exhaustion under FIRREA is not required), it bears the burden demonstrating that jurisdiction.[9] *Farnik*, 707 F.3d at 721.

---

[8]Exhaustion of administrative remedies is not always akin to a genuine jurisdictional requirement (that is, jurisdiction in the sense of adjudicatory competence), but *Farnik* explains why § 1821(d)(13)(D) truly is a jurisdictional requirement. 707 F.3d at 721 n.1.

[9]Because this is a challenge to jurisdiction, "the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been

Chicago Title does not dispute that it failed to exhaust the administrative procedures mandated by FIRREA. Chicago Title's Answer ¶ 17. Instead, Chicago Title argues that Barrington assumed the lease and all liabilities arising under the lease. Chicago Title's Resp. Br. at 7-9. If Barrington assumed the lease and its liabilities, so the argument goes, the claim for past-due rent is not against Charter (and the FDIC as Charter's receiver), but against Barrington. This argument lacks merit.

FIRREA is clear that courts cannot review claims "'relating to any act or omission' of a failed bank or of the FDIC as receiver of a failed bank unless they are first subjected to FIRREA's administrative claims process." *Farnik*, 707 F.3d at 722 (quoting 12 U.S.C. § 1821(d)(13)(D)(ii)). If Chicago Title's claim for past-due rent relates to the acts or omissions of the failed bank, then, it would fall under FIRREA's ambit. To resolve this issue, it is important to look at function, not form: "[L]itigants cannot avoid FIRREA's administrative requirements through strategic pleading, so a claim asserted against a purchasing bank based on the conduct of a failed bank must be exhausted under FIRREA." *Id.* at 722-23 (quoting *Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1209 (9th Cir. 2012)). FIRREA's administrative exhaustion requirement "is based not on the entity named as defendant but on the actor responsible for the alleged wrongdoing." *Id.* at 723.

Here, the agreed-upon facts demonstrate that Chicago Title's claim is functionally against *Charter* (and the FDIC as receiver of the failed institution).

---

submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers*, 536 F.3d at 656-57 (internal alterations and quotation marks omitted).

Chicago Title seeks unpaid rent for the period of January 2002 through February 2012. State Court Compl. ¶ 14. Charter failed in February 2012. Chicago Title's Answer ¶ 15 (admitting that Charter was closed on February 10, 2012). It was *Charter*, therefore, that was delinquent on rent; Barrington had not yet entered the picture. First Am. Compl. ¶ 23 (stating that Barrington did not assume the lease until June 8, 2012). Because there is no question that the claim for rent is related to an act or omission of Charter, not Barrington, the claim had to be exhausted under FIRREA as a pre-condition to filing suit.

When Charter failed, the FDIC required all parties who had a claim against the bank—including those who "leased space" to the institution—to follow their normal billing procedures and send an invoice to the FDIC. First Am. Compl. ¶ 16; Chicago Title's Answer ¶ 16 (admitting that Barrington's complaint accurately sets out the FDIC's public notice). All unpaid claims against Charter had to be filed on or before May 17, 2012. First Am. Compl. ¶ 16. At the time Charter failed, Chicago Title had leased space to Charter and had not yet been paid. It did not submit its claim by May 17, 2012 as required by the public notice. Chicago Title's Answer ¶ 17. Therefore, under FIRREA, Chicago Title's claim was disallowed.[10] 12 U.S.C. § 1821(d)(5)(C)(i) ("[C]laims filed after the date specified on the notice … shall be disallowed and such disallowance shall be final."). A claimant may appeal a disallowed claim to the district court, 12 U.S.C. § 1821(d)(6), but Chicago Title does not claim to have done so. So Chicago Title did not pursue its claim, which was

---

[10]Subject to an exception for a party who did not have notice of the appointment of a receiver. 12 U.S.C. § 1821(5)(C)(ii). Chicago Title does not claim that this exception applies.

based on the failed bank's wrongdoing, in the required administrative process. Because its claim is unexhausted, the Court lacks jurisdiction under § 1821(d)(13)(D) and Chicago Title has "no further rights or remedies with respect to such claim." 12 U.S.C. § 1821(d)(6)(B)(ii).

Chicago Title argues that it was not necessary to bring the claim for unpaid rent under the administrative claims procedures because Barrington assumed the lease. Citing *Federal Housing Finance Agency v. JP Morgan Chase & Co.*, Chicago Title claims that a claim related to an assumed liability cannot be brought under the administrative procedures of § 1821(d), and is therefore not subject to the exhaustion requirements. 902 F. Supp. 2d 476, 501-02 (S.D.N.Y. 2012). Chicago Title is correct that some courts have held that the term "claim" in § 1821(d) refers only to claims that could be brought under the administrative procedures of the FDIC, *see Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 921 (2d Cir. 2010),[11] but that is not the case here. In *Federal Housing*, the successor bank assumed the failed bank's liabilities on the same day that the bank closed. 902 F. Supp. 2d at 500-01. Because the successor bank had already assumed the relevant liabilities by the time the administrative claims process began, any claim based on

---

[11]It is not clear that this narrower approach (narrower in the sense that fewer disputes would come under the definition of a § 1821(d) "claim") would be adopted by the Seventh Circuit. *Bank of New York*, which established this approach, "specifically rejected" the broad reading of § 1821(d)(13)(D) that was advanced by the Ninth Circuit in *Benson*. *Federal Housing*, 202 F. Supp. 2d at 502. But *Benson*'s approach was favorably cited by the Seventh Circuit in *Farnik*. 707 F.3d at 723. In any event, the Court need not decide whether the narrower definition is correct, because Barrington did not assume any of Charter's liabilities until *after* the claims deadline had come and gone.

For the sake of completeness, it is worth noting that several courts have held that an assuming bank stands in the shoes of the FDIC (or Resolution Trust Corporation) for the purposes of enforcing the exhaustion requirement.

those liabilities would not "seek a determination of rights with respect to, the assets of any depository institution for which the Corporation was a receiver." *Id.* at 502 (quoting 12 U.S.C. § 1821(d)(13)(D)) (internal quotation marks and alterations omitted). The liabilities had *already passed* to the successor bank. Therefore, *Federal Housing* concluded, the claims could not have been brought under the administrative procedures of § 1821(d). *Id.*

In this case, however, Barrington had not yet assumed the lease when the administrative procedures were in place and when the claims deadline expired. First Am. Compl. ¶ 23 (Barrington assumed the lease on June 8, 2012); *see also* R. 8, Pl.'s Exh. D, Notice of Assumption (dated June 8, 2012). Therefore, at the time that the administrative process was open, Chicago Title's claim still involved the "assets of any depository institution for which the Corporation was a receiver." So it could have been—and was required to have been—brought under the administrative procedures of § 1821(d). On May 17, 2012, when the administrative period closed, the lease had not yet been assumed and Chicago Title's claim based on Charter's unpaid rent was a claim against the FDIC. When Chicago Title failed to submit its claims under the administrative procedures and then failed to appeal the automatic disallowance, FIRREA extinguished any "further rights or remedies with respect to such claim." 12 U.S.C. § 1821(d)(6)(B)(ii). Allowing Barrington's subsequent assumption of the lease to revive Chicago Title's claim based on Charter's wrongdoing "would encourage the very litigation that FIRREA aimed to avoid." *Village of Oakwood v. State Bank and Trust Co.*, 539 F.3d 373, 386 (6th Cir.

2008); *see also Farnik*, 707 F.3d at 723 (joining its "sister circuits," specifically the Sixth Circuit's holding in *Village of Oakwood*, and holding that "the FIRREA administrative exhaustion requirement is based not on the entity named as defendant but on the actor responsible for the alleged wrongdoing"). The fact that Barrington later assumed the lease "does not extinguish the jurisdictional bar for actions under FIRREA not first presented to the FDIC." *Westberg v. FDIC*, 926 F. Supp. 2d 61, 67 (D.D.C. 2013); *see also Village of Oakwood*, 539 F.3d at 386 (holding that the claimants' claims "are disallowed as a result of their failure to comply with the administrative-claims process, they 'have no further rights or remedies with respect to such claim[s]' despite the fact that they purport to bring them against State Bank rather than the FDIC") (quoting 12 U.S.C. § 1821(d)(6)(B)(ii)); *American First Fed., Inc. v. Lake Forest Park*, 198 F.3d 1259, 1263 n.3 (11th Cir. 1999) (noting that the acquiring bank "having purchased the note from the [Resources Trust Corporation (RTC), a predecessor to the FDIC], stands in the shoes of the RTC and acquires its protected status under FIRREA"). Chicago Title failed to exhaust its claim under FIRREA. 12 U.S.C. § 1821(d)(13)(D).[12]

## IV. Conclusion

For the reasons discussed above, the Court has federal-question jurisdiction over Barrington's declaratory-judgment action and supplemental jurisdiction over the compulsory counterclaim, and the FDIC is realigned as a plaintiff in the declaratory judgment action. Although the Court has subject matter jurisdiction

---

[12]Because there is no jurisdiction on exhaustion grounds, the Court need not address the FDIC's argument that Chicago Title lacks standing to interpret the Purchase and Assumption Agreement. *See* FDIC's Br. at 8-12.

over the counterclaim, it must nevertheless be dismissed for failure to exhaust under FIRREA. The rationale against the counterclaim appears to be, not surprisingly, applicable to Barrington's declaratory-judgment claim, in that the failure to exhaust would require entering a declaration that Barrington is not liable for the rent. But the Court will give the parties a chance to weigh-in on this: by May 4, 2015, the parties shall file position papers on whether or not the failure to exhaust also requires entry of judgment in favor of Barrington (and the re-aligned FDIC) and against the Chicago Title defendants in the declaratory-judgment action.

ENTERED:


     s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: April 24, 2015